IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–01677–RBJ–KMT

MICHAEL BRACKEEN,

      Plaintiff,

v.

STEVEN BROWN, SR (BCCF),
JAN BRYANT (BCCF),
TOM CLEMENTS (CDOC)
MARSHALL GRIFFITH (CDOC),
JOSIE LOPEZ (BCCF),
MELINDA MARTON (BCCF),
TERESA REYNOLDS (CDOC),
BRIGHAM SLOAN (BCCF),
MARLENE YBARRA, (BCCF),
ARI ZAVARAS (CDOC),
STEVE BROWN JR (BCCF), and
JASON SANCHEZ (CDOC),

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

     This case comes before the court on "Defendants' Motion to Dismiss Plaintiff's Complaint" filed by Defendants Clements, Griffith, Reynolds, Sanchez, and Zavaras ("CDOC Defendants") (Doc. No. 55 [CDOC Mot.], filed March19, 2012).  Plaintiff filed his response on May 15, 2012 (Doc. No. 67 [Resp. CDOC Mot.]), and the CDOC Defendants filed their reply on May 29, 2012 (Doc. No. 76 [CDOC Reply]).

Also before the court is "CCA Defandants' [sic] Motion to Dismiss" filed by Defendants Steve Brown, Sr., Bryant, Lopez, Marton, Sloan, Ybarra, and Steve Brown, Jr. ("CCA Defendants") (Doc. No. 60 [CCA Mot.], filed April 6, 2012).  Plaintiff filed his response on May 15, 2012 (Doc. No. 68 [Resp. CCA Mot.]), and the CCA Defendants filed their reply on June 12, 2012 (Doc. No. 77 [CCA Reply]).  These motions are ripe for recommendation and ruling.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's amended Complaint and the parties' submissions with respect to this Recommendation.  Plaintiff currently is an inmate in the Colorado Department of Corrections ("CDOC").  (Compl. [Doc. No. 42] at 2.)  Plaintiff filed his amended Prisoner Complaint on December 29, 2011, seeking injunctive relief, as well as punitive and compensatory damages.  (*Id.* at 14.)  Plaintiff alleges the defendants have violated his First Amendment rights by censoring his mail and by retaliating against him for exercising his rights.  (*See id.* at 6.)  Plaintiff also alleges Defendants violated his Fourteenth Amendment due process and equal protection rights.  (*See id.* at 11.)

In Claim One, Plaintiff alleges since October 2010, Bent County Correctional Facility ("BCCF") and the CDOC have censored *Penthouse* magazine by removing "names, dates, and pertinent information."  (*Id.* at 7.)  CDOC Administrative Regulation ("AR") 300-26 allows the CDOC and its facilities to prohibit reading material if it is sexually explicit.[1]  (*See* CDOC Mot.,

---

[1]A court may take judicial notice of agency rules and regulations.  *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888,889 (10th Cir. 1984).  Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.  *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).

2

Ex. A at 3.)  Plaintiff claims none of the censored pages "fell within the guidelines of A.R. 300-26." (Doc. No. 42 at 7, 8.)

In Claim Two, Plaintiff alleges the defendants have violated his "due process and equal rights granted by the Fourteenth Amendment." (*Id.* at 11.)  Specifically, Plaintiff alleges *Penthouse* magazine is allowed into all other CDOC facilities other than BCCF. (*Id.*)  Plaintiff also alleges BCCF is not following the "process" set forth in AR 300-26 and that the "process" is "biased." (*Id.*)

In Claim Three, Plaintiff alleges he "has been retaliated against by the BCCF mailroom staff and officials because of his outspoken stance and for leading this [§] 1983 action against BCCF officials and staff." (*Id.* at 12.)  Plaintiff also alleges the defendants refused to allow *Penthouse* magazine into BCCF because Plaintiff "kept filing grievances over the magazine." (*Id.* at 9.)

## LEGAL STANDARDS

### *1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines*, 404 U.S. at 520 (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may

3

not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has

violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc.*

*v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*,

113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations

to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th

Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of

any discussion of those issues").

### 2.      *Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter

jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the

merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to

adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the

complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal

courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically

authorized to do so). The burden of establishing subject matter jurisdiction is on the party

asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A

court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it

becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is

without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see*

*also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals

4

for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

### 3. *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

6

**ANALYSIS**

*1.      Eleventh Amendment Immunity*

The CDOC Defendants assert that the claims against them in their official capacities must

be dismissed based on Eleventh Amendment immunity.[2]  (CDOC Mot. At 3.)  The Eleventh

Amendment to the United States Constitution states: "The Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

State."  U.S. Const. amend. XI.  It has been interpreted to bar a suit by a citizen against the

citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits

against state officials in their official capacity should be treated as suits against the state.  *Hafer*

*v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her

official capacity is a suit against the official's office and therefore is no different from a suit

against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The

Eleventh Amendment thus shields state officials, acting in their official capacities, from claims

for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).  Moreover, a

§ 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983.  Neither states nor

state officers sued in their official capacity for monetary damages are persons within the

meaning of § 1983.  *Will*, 491 U.S. at 70-71.

---

[2]The Complaint does not state whether the plaintiff is suing the defendants in their
individual capacities, official capacities, or both.

Plaintiff's claims for monetary relief against the CDOC Defendants in their official capacities constitute claims against the Colorado Department of Corrections. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). Therefore, Plaintiff's official-capacity claims for monetary relief against the CDOC Defendants are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction. *See id.*; *Bennett*, 17 F.3d at 1267.

However, Plaintiff also seeks injunctive relief from the CDOC Defendants, apparently alleging their actions constitute a continuing violation of the Constitution. Official capacity defendants are persons for § 1983 purposes. *Will*, 491 U.S. at 71, n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985)). Likewise, injunctive relief claims against official capacity defendants seeking to end constitutional violations are not barred by the Eleventh Amendment. *See Green v. Mansour*, 474 U.S. 64, 68; *Ex parte Young*, 209 U.S. 123, 155–156 (1908). Thus, to the extent Plaintiff seeks injunctive relief against the CDOC Defendants in their official capacities, those claims survive.

### 2. *Personal Participation*

The CDOC Defendants argue that Plaintiff has failed to allege personal participation by Defendants Clements and Zavaras. Personal participation is an essential allegation in a § 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish

8

personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *Graham*, 473 U.S. at 166.  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  Morever, it is well established that a defendant may not be held liable for constitutional violations merely because he or she holds a supervisory position.  *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.

Plaintiff's only allegation against Defendants Clements and Zavaras is that they did not "step in and correct" the BCCF's alleged censoring of the material that should not have been censored.  (Doc. No. 42 at 9.)  Plaintiff states Defendant Clements and Zavaras, as the current and former directors of prisons, are responsible for all inmates' rights.  (*Id.* at 2, ¶ 5; 5, ¶ 12.) Plaintiff appears to hold Defendants Clements and Zavaras vicariously liable for the deprivation of Plaintiff's constitutional rights merely because they hold positions of authority and responsibility.  This, of course, is insufficient to establish the defendants' personal participation in violating Plaintiff's constitutional rights.  Plaintiff has failed to allege an affirmative link between the alleged constitutional violation and the defendants' own participation or failure to supervise.  *Butler*, 992 F.2d at 1055.  Accordingly, the court finds that Plaintiff fails to sufficiently allege that Defendants Clements and Zavaras personally participated in the alleged violations of Plaintiff's constitutional rights, and the claims against them should be dismissed.

9

### 3.      *Prison Litigation Reform Act*

The CDOC Defendants argue that Plaintiff's claims for compensatory damages must be dismissed for failure to state a claim because he has not alleged that he suffered any physical injury.  (CDOC Mot. at 5.)  The Prison Litigation Reform Act (PLRA) states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. 42 U.S.C. § 1997e(e).  *See also Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 807 (10th Cir. 1999).  Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff does not allege a physical injury resulting from Defendant Barker's alleged retaliatory actions.  Instead, it appears the damages he seeks are for emotional distress only. Thus, his request for recovery of compensatory damages for mental and emotional injury is barred by the PLRA.

Nevertheless, section 1997e(e) does not bar recovery of nominal or punitive damages.[3] *Searles*, 251 F.3d at 879, 881.  Thus, to the extent Plaintiff is seeking recovery, including nominal or punitive damages, unrelated to mental and emotional harm, the limitation Defendants

---

[3]Indeed, though Plaintiff did not specifically request nominal damages, an award of nominal damages is mandatory upon a finding of a constitutional violation.  *See Carey v. Piphus*, 435 U.S. 247, 267 (1978); *Searles*, 251 F.3d at 881.

seek to impose–a prior showing of physical injury–does not apply. *See id.*, 251 F.3d at 876

("The statute limits the remedies available, regardless of the rights asserted, if the <u>only</u> injuries

are mental or emotional.") (emphasis added).

### 4. *First Amendment Claim*

The CDOC and CCA Defendants argue that Plaintiff's censorship claim fails as a matter

of law because Plaintiff has no First Amendment right to receive sexually-explicit materials and

that AR 300-26 is constitutional. (*See* CDOC Mot. at 6–12; CCA Mot. at 4–9.)

It is well settled that inmates have a First Amendment right to receive information while

in prison to the extent that right is not inconsistent with prisoner status or the legitimate

penological objectives of the prison. *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004)

(citing *Pell v. Procunier*, 417 U.S. 817 (1974)). The Supreme Court has held that prison

officials violate an individual's First Amendment right to free speech when, for reasons

unrelated to legitimate penological interests, they engage in "censorship of . . . expression of

inflammatory political, racial, religious, or other views, and matter deemed defamatory or

otherwise inappropriate." *Id.* at 415 (internal quotations omitted). In *Turner v. Safley*, 482 U.S.

78, 89 (1987), the Supreme Court held that prison regulations that impinge upon an inmate's

First Amendment rights are valid only if they are "rationally related to legitimate penological

objectives." The *Turner* Court articulated four factors that should be considered in determining

the constitutionality of a prison's restrictions on speech: (1) whether a valid, rational connection

exists between the regulation and the government interest it protects; (2) whether prisoners have

alternative means of exercising the protected right; (3) the impact of accommodating the right on

other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89–90. This analysis requires the court, "on a case-by-case basis, to look closely at the facts of a particular case and the specific regulations and interests of the prison system in determining whether prisoners' constitutional rights may be curtailed." *Beerheide v. Suthers*, 286 F.3d 1179, 1186 (10th Cir. 2002).

It appears from a review of the Complaint that Plaintiff disagrees only with how AR 300-26 is applied to him, and not that the AR is unconstitutional on its face. An "as applied" First Amendment claim very similar to those raised by Plaintiff here was rejected by this court in *Frazier v. Ortiz*, No. 07–cv–02131–CMA–KMT, 2010 WL 924254 (D. Colo. Mar. 10, 2010). In *Frazier*, the inmate contended that defendants violated his First Amendment rights by interfering with and censoring his mail, in particular, various issues of *Rolling Stone*, *Maxim*, *Spin*, *Billboard*, and *Blender* magazines. The *Frazier* court and other courts, utilizing the factors outlined in *Turner*, have found AR 300-26 to be constitutional on its face. *See Frazier*, 2010 WL 924254, at *4–6, *12–14, *aff'd* 417 F. App'x 768 (10th Cir. Mar. 28, 2011); *see also Ind v. Wright*, 52 F. App'x 434 (10th Cir. Nov. 25, 2002) (utilizing *Turner* factors and standard in *Thornburgh v. Abbott*, 490 U.S. 401 (1989), found AR 300-26 to be facially valid in the context of a denial of religious material); *Rooks v. Zavares*, No. Civ. A. 99-B-631, 2001 WL 34047959, at *8 (D. Colo. Jan. 25, 2001) (same). Thus, based on the reasoning set forth in *Frazier*, to the extent Plaintiff asserts that the AR 300-26 is unconstitutional on its face, the argument fails.

On the other hand, with regard to Plaintiff's claim that the AR is unconstitutional as it is applied to him, the court cannot conduct this analysis based on a non-existent factual record. The defendants argue that the various pages of Plaintiff's *Penthouse* magazines that were withheld contained sexually explicit and/or nude material.  (*See, e.g.,* CCA Mot. at 5.) Defendants' argument, however, is misplaced at this procedural juncture.  As stated previously, on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept the allegations in Plaintiff's Complaint as true and view all reasonable inferences from those facts in Plaintiff's favor.  Plaintiff's Complaint repeatedly states that none of the censored materials "fell within the guidelines of AR 300-26."  (Doc. No. 42 at 7, 8.)  The court cannot simply accept defendants' assertions that the pages and issues of the magazines contained prohibited content; instead, the court must infer from the allegations in Plaintiff's Complaint that they did not contain prohibited content.  Accepting the allegations in the pleading as true and resolving all reasonable inferences Plaintiff's favor, this court finds that Plaintiff has pleaded enough to survive a motion to dismiss the First Amendment "as applied" claim.

### 5.    *Fourteenth Amendment Claims*

Defendants argue that Plaintiff has failed to state Fourteenth Amendment due process and equal protection claims.

### a.    *Due Process Claim*

Defendants argue that Plaintiff has failed to state a claim for a due process violation because he has failed to allege a deprivation of a property or liberty interest sufficient to invoke the protection of the due process clause.  (*See* CDOC Mot. at 12–13; CCA Mot. at 10–11.)  The

court agrees with the defendants that Plaintiff has failed to state a due process claim, but for a

different reason.

Plaintiff alleges in his Complaint that the defendants violated his due process rights by

failing to follow the "process" required by AR 300-26.  (*See* Doc. No. 42 at 11.)  However, a

failure to adhere to administrative regulations does not equate to a constitutional violation.

*Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not

lose their qualified immunity merely because their conduct violates some statutory or

administrative provision."); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A]

failure to adhere to administrative regulations does not equate to a constitutional violation.").

Thus, Plaintiff's due process claim is properly dismissed.

### b.    *Equal Protection Claim*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of

Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S.

202, 216 (1982)).  The challenged disparate treatment must be the result of purposeful

discrimination.  *Harris v. McRae*, 448 U.S. 297, 323 (1980).  To properly allege an equal

protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated

differently from others with whom he is similarly situated and that the unequal treatment was the

result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th

Cir.2002).

14

Plaintiff alleges that other CDOC facilities inmates in other CDOC facilities are allowed to have the publications that he has been denied.  (Doc. No. 42 at 11.)  Plaintiff asserts that "[i]f one facility rules this material to be not allowed, then it is backed by DOC, then all facilities must follow the ruling . . . ."  (*Id.*)  However, Plaintiff fails to show he is "similarly situated" to any particular individual who receives, or group that receives, the publications denied him.  In addition, Plaintiff has not shown any disparate treatment or purposeful discrimination.  In fact, Plaintiff fails to allege any specific facts upon which this court may discern a claim for a violation of the equal protection clause.  Accordingly, Plaintiff's Fourteenth Amendment equal protection claim is properly dismissed.

### 6.      *First Amendment Retaliation Claim*

Defendants argue that Plaintiff has failed to state a claim for retaliation.  To state a claim for First Amendment retaliation, the plaintiff must plead facts indicating that he can plausibly prove three elements at trial: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).  In this context, the Supreme Court has defined "injury" as a hindrance in a prisoner plaintiff's efforts to pursue a legal claim.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  A plaintiff must allege facts to show that retaliation was the animus behind the defendants' actions, *i.e.*, a plaintiff must show that "but for" a desire to retaliate, the defendants would not have acted as

15

they did.  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *Smith v. Maschner*, 899

F.2d 940, 949–50 (10th Cir. 1990).  "The inmate must allege more than his personal belief that

he is the victim of retaliation."  *Jones*, 188 F.3d at 325.

Here, Plaintiff alleges that the "mailroom staff and officials" retaliated against him

"because of his outspoken stance and for leading this [§] 1983 action against BCCF."  (Doc. No.

42 at 12.)  Plaintiff alleges in January 2011 he filed an "appeal" regarding several pages of an

"adult movie catalog" and *Penthouse* magazine that were removed by the Reading Committee.

(*Id.*)  In February 2011, the entire catalog was "rejected" and Plaintiff did not receive his issue of

*Playboy* magazine.  (*Id.*)  Plaintiff also alleges he did not receive his August 2011 issue of

*Playboy* magazine for over two weeks, and he never received his September, October,

November, and December 2011 issues of *Playboy* magazine.  (*Id.*)

While Plaintiff has adequately alleged that he engaged in protected activity, namely filing

grievances and a lawsuit against the defendants, he has failed to allege adequately that

Defendants caused him to suffer an injury or that any retaliation was behind Defendants'

purported actions.  Plaintiff has pleaded no facts alleging he was hindered in his efforts to file

grievances or to pursue a legal claim.  *See Lewis*, 518 U.S. at 351.  Plaintiff also has pleaded no

facts to support his conclusory allegation of a retaliatory motive. Moreover, though Plaintiff

appears to hold the "mailroom staff and officials" accountable for the allegedly withheld

magazines, there is no indication Plaintiff ever filed grievances against "the mailroom staff" or

that "the mailroom staff" knew about the grievances Plaintiff filed against the Reading

Committee members.  (*See* Doc. No. 42 at 12.)

16

Finally, the courts have recognized that, in retaliation claims, the presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation.  *See Maschner*, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him—circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants").  Here, however, most of the alleged retaliatory conduct occurred eight or more months after Plaintiff states he filed his "appeal."  (*See* Doc. No. 42 at 12.)  Even if the events had occurred in closer proximity, in *Strope v. Cummings*, the Tenth Circuit reiterated that "temporal proximity between a protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim."  381 F. App'x 878, 883 (10th Cir. 2010.)  The Court reasoned that if a prisoner could rely on timing alone to assert a claim of retaliation, "litigious prisoners could claim retaliation over every perceived slight and resist summary judgment simply by pointing to their litigiousness."  *Strope*, 381 F. App'x at 883.

In this case, Plaintiff has provided no more than "his personal belief that he is the victim of retaliation."  *Jones*, 188 F.3d at 325.  Thus, his retaliation claim is properly dismissed.

### 7.      *Claim for Punitive Damages*

The CDOC Defendants argue that the Complaint fails to state a claim for punitive

damages because it does not contain sufficient allegations to demonstrate that the CDOC

Defendants acted with the requisite knowledge or callous indifference.  (CDOC Mot. at 5.)

Punitive damages are available in a § 1983 action when "the defendant's conduct is

shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56; *see also*

*Soderbeck v. Burnett County*, 752 F.2d 285, 291 (7th Cir. 1985) (stating that "punitive damages

. . . are reserved for cases where the wrongfulness of the defendant's conduct is conspicuous,

implying that its wrongfulness is apparent to the person who engages in it, and not just to a

lawyer").

In this case, Plaintiff's Complaint fails to allege the mental state of any of the Defendants

at the time of their allegedly unlawful conduct.  Thus, Plaintiff has not pleaded any facts

supporting the required element that Defendants acted with "evil motive or intent" or "reckless

or callous indifference" to his rights.  *Wade*, 461 U.S. at 56.  Accordingly, Plaintiff has not stated

a claim for punitive damages under 42 U.S.C. § 1983.

### 8.      *Qualified Immunity in Individual Capacities*

Finally, the CDOC Defendants argue that they are entitled to qualified immunity.

(CDOC Mot. at 17–18.)  The doctrine of qualified immunity shields government officials from

individual liability for civil damages "insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss.  *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645–46 (10th Cir.1988).  Once the defense is asserted, the burden shifts to the plaintiff to establish (1) that the defendants' actions violated a federal constitutional or statutory right and (2) that the federal right was clearly established at the time of the challenged conduct.  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir.2010); *see also Losavio*, 847 F.2d at 646.  The latter determination, that is whether the right was clearly established, must be made "in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201. "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.  Although the qualified immunity analysis involves a two-part inquiry, if the plaintiff fails either prong, reviewed in any order, qualified immunity is appropriate and no further inquiry need be undertaken.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to all of Plaintiff's claims except the First Amendment "as applied" claim, Plaintiff has not met his burden here.  As described above, Plaintiff has not stated claims for a First Amendment "on its face claim," a First Amendment retaliation claim, or Fourteenth Amendment due process or equal process claims.  Accordingly, as to these claims, the court need not address

whether such rights were clearly established, *see Thomson v. Salt Lake Cnty*, 584 F.3d 1304, 1312, n.2 (10th Cir. 2009), and the CDOC Defendants are entitled to qualified immunity.

As to Plaintiff's First Amendment "as applied" claim, the law is clearly established that inmates have a First Amendment right to receive information while in prison and that prison officials may not censor prisoners' incoming publications unless the censorship is reasonably related to a legitimate penological interest. *See Pell*, 417 U.S. at 822. Consequently, a reasonable official would know that such censorship, in the absence of a legitimate penological interest, would violate an inmate's constitutional rights. As discussed above, the court is unable to conduct the analysis to determine if the Administrative Regulation "as applied" to Plaintiff is constitutional at this time. Therefore, the defendants are not entitled to qualified immunity on Plaintiff's First Amendment "as applied" claim at this juncture.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Motion to Dismiss Plaintiff's Complaint" (Doc. No. 55) and "CCA Defandants' [sic] Motion to Dismiss" filed by Defendants Steve Brown, Sr., Bryant, Lopez, Marton, Sloan, Ybarra, and Steve Brown, Jr. (Doc. No. 60) be **GRANTED in part** and **DENIED in part** as follows:

1.      Plaintiff's official-capacity claims for monetary relief against the CDOC Defendants should be dismissed for lack of subject matter jurisdiction;

2.      Plaintiff's claims against Defendants Clements and Zavaras should be dismissed for failure to allege personal participation;

3.      Plaintiff's claims for recovery of compensatory damages for mental and emotional injury should be dismissed as barred under the PLRA;

4.      Plaintiff's First Amendment "on its face claim," First Amendment retaliation claim, and Fourteenth Amendment due process and equal process claims should be dismissed for failure to state a claim upon which relief can be granted;

5.      The CDOC Defendants should be granted qualified immunity as to Plaintiff's First Amendment "on its face claim," First Amendment retaliation claim, and Fourteenth Amendment due process and equal process claims; and

6.      Plaintiff's First Amendment "as applied" claim for injunctive relief should proceed against all defendants except Defendants Clements and Zavaras;

7.      Plaintiff should be limited to injunctive relief against the CDOC Defendants in their official capacities and to nominal relief against the CDOC Defendants in their individual capacities.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

21

review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 8th day of January, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

22